**E-FILED**
Wednesday, 14 March, 2007  03:39:55 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SARAH GRIPPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 04-3215 |
| | ) | |
| CITY OF SPRINGFIELD, | ) | |
| ILLINOIS, a Municipal | ) | |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

The City's motion for summary judgment is allowed and judgment is entered in favor of the City of Springfield.

Let's look now at the facts.

## I. BACKGROUND

This is a civil rights action pursuant to 42 U.S.C. § 1983, in which Plaintiff Sarah Gripper, an African-American, has asserted claims for racial discrimination and retaliation under 42 U.S.C. § 1981, and the Thirteenth

1

and Fourteenth Amendments to the United States Constitution.   The Plaintiff was employed by Defendant City of Springfield, Illinois, from May 25, 1995 through September 30, 2003.  On September 30, she was laid off from her position as a grants technician, which was a grant-funded position.

The reason given for the lay-off was that funding for the position was no longer available.  The Plaintiff claims she was told that there were no other positions available for her within the City government.  The City maintains that Gripper never applied for a position within the City, nor was she prevented from doing so.  The Plaintiff alleges that white employees of the City whose job positions were grant funded and whose funding expired were either provided with alternative positions within the City government or alternative sources of funding for the position.

The Plaintiff states that at the time of her lay-off, she was the only employee of the administrative section of the Department of Public Works for the City who was of African-American ethnicity.  Matt Hitzemann, who is white, was at all relevant times employed by the Department of Public Works for the City as its Fiscal Director.  The Plaintiff alleges that in the

2

Spring of 2003, she was discussing with Hitzemann the grant which Gripper managed and was attempting to cause Hitzemann to comply with certain grant requirements so that funds for such grant would be released by the Illinois Department of Transportation to the City. Gripper asserts that the City had not received funds for such grant since February 2003 because Hitzemann had not complied with certain grant requirements. According to the Plaintiff, it was during this conversation that Hitzemann, in the presence of other employees, called her a "stupid black bitch." She reported this comment to Kim Wonnell, who was the Personnel Manager in the City's Human Resources Department.

The Plaintiff also informed her supervisor, Richard Berning, about Hitzemann's comment. Gripper claims Berning told her that Hitzemann talks to everyone like that, to which Gripper replied that Hitzemann could not talk to everyone like that because not everyone who worked there is black. The Plaintiff alleges that soon after she made these complaints about Hitzemann's comment, Hitzemann again called her a "stupid black bitch." She reported this comment to Kendra Davis, who also worked in the

3

Human Resources Department as its Assistant Director.

The Plaintiff further alleges that in August 2003, she reported Hitzemann's comments to Todd Renfrow, who was then the Director of CWLP and the Public Works Division for the City. Although the City claims it investigated the complaint made by Gripper and determined that there was no evidence to support the allegation, the Plaintiff contends that the City took no action in response to Gripper's complaints. Her complaints about treatment based on race were ignored.

The parties agree there is no dispute that the ending of the Plaintiff's grant-funded position had nothing to do with retaliation or racial discrimination. It also had nothing to do with Plaintiff's work performance. That position ended solely because the grant ended. Gripper notes that she does not claim that the ending of that position was due to retaliation or racial discrimination.

The Plaintiff states that her complaint is that she was not retained as an employee by the City after the grant-funded position ended. First, the failure to retain her as an employee was in retaliation for her recent

4

complaints that she had been called a "stupid black bitch" by Hitzemann, her superior, on two occasions.  Second, unlike Gripper, white employees were routinely provided with other jobs when their grant funding ended. The Plaintiff alleges that all white employees whose grant funding ended during Mayor Timothy Davlin's administration were retained.  The Plaintiff asserts that she did not apply for any of these jobs because when she mentioned that she was interested in continuing her employment with the City in one of the ten or eleven positions for which she believes she was qualified, Larry Selinger, the City's Director of Human Resources responded, "There's no job openings for you," stressing the word "you." Gripper states that she thought it would have been futile to apply. Moreover, other employees whose grants expired were not required to apply for another job.

The Plaintiff alleges that with respect to those issues, there are numerous factual disputes which preclude summary judgment.

## II. ANALYSIS

### A. Summary judgment standard

The entry of summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A "material fact" is a fact which may affect the outcome of the litigation, given the substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  There is a "genuine issue" of material fact when a reasonable juror could find that the evidence supports a verdict for the non-moving party.  Id.  "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  If a defendant can show the absence of some fact that the plaintiff must prove at trial, then the plaintiff must produce evidence, and not

merely restate his allegations, to show that a genuine issue exists.  Sartor v. Spherion Corp., 388 F.3d 275, 278 (7th Cir. 2004).

B. Policy or custom for municipal liability under section1983

The City contends that it is entitled to summary judgment on the Plaintiff's claims under 42 U.S.C. § 1983 because she is unable to show a constitutional deprivation caused by an official policy or custom of racial discrimination by the City against African-Americans.  Moreover, Gripper is unable to show that Hitzemann was a person with final policymaking authority.  The City asserts that it has not been deliberately indifferent to problems of race discrimination.  The City's Civil Service Commission adopted rules prohibiting race discrimination, authorizing employees to file complaints, and establishing a procedure to investigate such complaints. The City further contends that Gripper cites only herself as an example as someone who has complained about racial slurs allegedly being made without remedial action being taken by the City.  Moreover, the City claims the complaint was taken seriously and officials investigated Plaintiff's allegation that she was called a derogatory name.

In contending that there is a policy and practice of racial discrimination by the City, the Plaintiff relies in part on the deposition testimony of Letitia Dewith-Anderson, an African-American, who was hired as Mayor Davlin's Chief of Staff in April 2003. She testified that there is racism in the City government. In August 2003, Ms. Dewith-Anderson's title was changed from Chief of Staff to Executive Assistant. After this change, she claims that she was no longer allowed to attend meetings. Moreover, although Ms. Dewith-Anderson always had access to Mayor Davlin when she was his Chief of Staff, she could "barely speak" to him after the change. She resigned in January 2004.

In its reply brief, the City alleges that Ms. Dewith-Anderson's resignation had nothing to do with discrimination. When she was interviewed soon after she left her employment, Ms. Dewith-Anderson stated that she eliminated her position from the city budget.[1] Moreover, she said that she did not regret taking a position with the Davlin

---

[1]Ms. Dewith-Anderson stated, "The responsibilities that were defined in the reorganization do not require an executive assistant or whatever title you want to give it to make $72,000 a year."

8

administration.

The Plaintiff also relies on an August 24, 2005 letter that City Alderman Frank McNeil wrote to the United States Department of Justice ("DOJ"). In the letter Alderman McNeil states, "I believe there are widespread discriminatory practices occurring now and have been for many years." He goes on to note, "The history of Springfield City government is full of examples of racial disparity in hiring" and "Unfortunately, Springfield has a long history of race related issues, which have resulted in legal actions to correct." In the letter, Alderman McNeil asks DOJ to institute a formal investigation into the hiring and promotional practices in the City's police and fire departments.

The Plaintiff further alleges that, according to the information provided by the City, out of 272 persons hired during the Davlin administration, only 18 are African-American. The current African-American population of Springfield is about 15%. There are 64 City employees in grant-funded positions, only two of whom are African-American. Gripper further contends that there are no African-Americans in

grant-funded positions in the police department, public works, or the library. There are 271 police officers; only eleven are African-American. Out of 155 firefighters, only two are African-American.

The Plaintiff asserts that although Larry Selinger testified that retention of minorities was a priority for the City at the time she was laid off, there is no evidence that the City made any effort to find another position for her, even though there were at least ten openings for jobs she could have performed.

"Municipal entities cannot be held vicariously liable for the acts of their employees under Section 1983 on a *respondeat superior* theory." Phelan v. Cook County, 463 F.3d 773, 789 (7th Cir. 2006). "To establish liability, [Gripper] must produce evidence of '(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.'" Id. (quoting Roach v. City of

Evansville, 111 F.3d 544, 548 (7th Cir. 1997)).  "If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work."  Calhoun v. Ramsey, 408 F.3d 375, 380 (7th Cir. 2005).

The Plaintiff appears to allege that the City has a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law.  Based on the statements of Alderman McNeil and Ms. Dewith-Anderson, the Plaintiff argues that the City of Springfield has a well-documented history of racial discrimination which continues today.

In its reply brief, the City contends that the Plaintiff limits the time frame when it is convenient in discussing the history of racial discrimination.  Although she refers to the history of racial discrimination in Springfield as described by Alderman McNeil, the Plaintiff seeks to dismiss evidence of white employees who were not retained in their grant-funded jobs in the six years prior to the current administration, which the City asserts is closer in time and more relevant to the instant case.   The City alleges that Gripper attempts to argue that the Davlin administration

11

conspired to discriminate against her without providing any evidence in support of that allegation. Moreover, Mayor Davlin has been a strong advocate of minority hiring and retention with the creation of the Minority and Female Recruitment Committee to increase the number of minorities and women in the Police and Fire Department. The City further asserts that nothing in the record supports the Plaintiff's allegation that segregation took place at the Public Works Garage.

There is no question that the City of Springfield, like many cities in the United States, has a history which includes racial discrimination. Although some of the evidence of this history relied on by the Plaintiff is of questionable relevance in the inquiry, the Court agrees that evidence of recent problems with minority hiring is relevant and may establish a factual issue as to whether there was a widespread practice of discrimination sufficient for imposing municipal liability under section 1983, when that evidence is viewed in the light most favorable to the Plaintiff. For the purposes of the summary judgment motion, the Court concludes that the Plaintiff has created a genuine issue of material fact as to this issue.

C. Section 1981 retaliation claims

The Plaintiff alleges that she has provided sufficient evidence from which a reasonable jury could return a verdict in her favor on her retaliation claims. Retaliation may be proven directly or indirectly. Firestine v. Parkview Health Systems, Inc., 388 F.3d 229, 233 (7th Cir. 2004). Courts generally apply the same prima facie requirements to discrimination claims brought under Title VII and section 1981. Humphries v. CBOCS West, Inc., 474 F.3d 387, 403 (7th Cir. 2007).

(1) Retaliation–Direct Method

"To establish retaliation under the direct method of proof, a plaintiff must offer evidence that he engaged in a statutorily protected activity, that the defendants subjected him to an adverse employment action and that a causal connection exists between the two events." Treadwell v. Office of Illinois Secretary of State, 455 F.3d 778, 781 (7th Cir. 2006). The direct method does not always require direct evidence. Id. "[C]ircumstantial evidence that is relevant and probative on any of the elements of a direct case of retaliation may be admitted and, if proven to the satisfaction of the

13

trier of fact, support a case of retaliation." Id. (citing Sylvester v. SOS Children's Villages of Illinois, 453 F.3d 900, 902-03 (7th Cir. 2006)).

If a plaintiff establishes all of the necessary elements to make out a prima facie case, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the challenged employment action.  An "employer is entitled to summary judgment 'unless there is a material issue of fact as to whether the employer's non-invidious reason is pretext for retaliation.'" Sublett v. John Wiley & Sons, Inc., 463 F.3d 731,  740 (7th Cir. 2006)(quoting Hudson v. Chicago Transit Auth., 375 F.3d 552, 559 (7th Cir. 2004)).

The Plaintiff alleges that she engaged in statutorily protected activity by complaining to Todd Renfrow, Richard Berning and others that Matt Hitzemann had called her a "stupid black bitch" on two occasions.  She was subjected to a materially adverse employment action when she was not retained as an employee.   Gripper contends that there is a causal connection.  Although there were at least ten jobs available at that time that she could have performed, Larry Selinger told her there were no jobs

14

available for her.  The Plaintiff asserts that all other employees whose grants ended during the Davlin administration were retained.  The Plaintiff notes, moreover, that all of these employees except for her were white and none, except Plaintiff, had engaged in statutorily protected activity.

The Plaintiff contends that the temporal sequence in this case shows a causal connection.  Gripper began complaining in June 2003 about the racial slurs.  She continued into August 2003 when she complained again to Todd Renfrow.  It was September 2003 when the grant ended and Plaintiff was not retained.  The Plaintiff contends a jury could reasonably conclude that there is a causal connection between the complaints she made a short time before the refusal to retain her as an employee.

The Seventh Circuit has observed that close temporal proximity does provide evidence of causation and may allow a plaintiff to withstand summary judgment if there is other evidence that supports the inference of a causal link.  Lang v. Illinois Dept. of Children and Family Services, 361 F.3d 416, 419 (7th Cir. 2004).  However, "[s]peculation based on suspicious timing alone . . . does not support a reasonable inference of

15

retaliation." <u>Burks v. Wisconsin Dept. of Transp.</u>, 464 F.3d 744, 758 (7th Cir. 2006) (citation omitted). Moreover, "'[t]he mere fact that one event preceded another does nothing to prove that the first event caused the second;' the plaintiff also must put forth other evidence that reasonably suggests that her protected speech activities were related to her employer's discrimination and termination." <u>Id.</u> at 758-59 (citation omitted).

The City contends that the alleged remarks made by Matt Hitzemann are not sufficiently connected to the Plaintiff's layoff to support a finding of retaliation. Hitzemann was not her supervisor, nor did he have any input into the decision to lay off Gripper because Gripper lost her position when the grant funding ran out. According to the City, there is no nexus between the stray remark and the challenged action.

Contrary to the City's argument, it is the Plaintiff's complaints about Hitzemann's alleged references to her as a "stupid black bitch," not the statements themselves, that form the basis of her retaliation claim. Although the temporal proximity alone between the Plaintiff's protected activity and her termination is not sufficient to establish a prima facie case

16

of retaliation under the direct method, when this factor is combined with other evidence the Court concludes that the Plaintiff has created a genuine issue of material fact as to whether a causal connection exists between the two events. Specifically, the Plaintiff asserted that although there were at least ten jobs that she could have performed at that time, she was told by Selinger that there were no jobs available for her. The Court concludes that when considered along with the temporal proximity, Selinger's alleged statement is sufficient to create a factual dispute as to whether she has alleged a prima facie case pursuant to the direct method of proving retaliation.

The City asserts that it had a legitimate, non-discriminatory reason for the challenged action; the grant money was not going to be renewed by IDOT. In a letter dated September 17, 2003, Selinger informed Plaintiff that her position would no longer exist after September 30, 2003 because the grant funding had run out. Moreover, Gripper failed to apply for any of the job openings that were posted prior to and at the time of her layoff. Mayor Davlin testified that individuals had to apply for positions, stating

17

"Well, we don't provide jobs for others.  It is up to them, the individual to apply."

The City contends, therefore, that even if the Plaintiff is able to allege her prima facie case, she has failed to show that she ever applied for another position or was prevented from doing so.  Gripper suggests that applying for another position would have been futile because Selinger told her there were no other jobs for her.  If an individual would not be considered for a position, the "futile gesture doctrine" may apply to allow a plaintiff's claims to go forward, even if she did not submit the requisite application.  See Karraker v. Rent-A-Center, Inc., 411 F.3d 831, 837 (7th Cir. 2005) (citing Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 365-66 (1977) ("When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.")).

The Plaintiff contends that there was no point in formally applying for jobs that she had already informally applied for and had been told she

18

would not receive.  Moreover, she notes that Todd Renfrow testified that he could not recall any employee whose grant ended being required to apply for another job.  Larry Selinger testified that when his daughter-in-law's grant-funded position ended, she was provided with a permanent position in the police department.  Other employees such as Kim Wonnell and Kendra Davis testified that they did not know of any person other than Gripper who was not retained by the City when their grant funding ended. Although Rich Berning stated that other employees in Public Works whose grant funding ran out were also laid off, Berning could not specifically recall any such employee.

Notwithstanding Renfrow's statement or the testimony of other employees, the City has produced the affidavit of Jim Kuizin, who was the Fiscal Officer with the City of Springfield Lincoln Library.  Kuizin states that the City did not place in other City positions two individuals who were laid off from grant-funded positions as Library Assistants in 1996 and 1997, nor did the City apply for alternative funding to continue those grants. Moreover Gail O'Neill, who was the Interim Administrator with the City of

Springfield Health Department in 1997, stated that Melissa Hansen-Comford was laid off from the City of Springfield when the grant funding for her position was reduced by the State.  Ms. O'Neill states that the City did not place Hansen-Comford in another position or apply for alternative funding.  The Plaintiff claims these facts are immaterial because these events occurred during the previous mayoral administration.

Although the Plaintiff provides a list of individuals who she alleges were employed by the City and were retained even though their grant funding ended during the Davlin administration, the list provides only the names of the individuals, their positions, and states the dates on which they were transferred.  It does not indicate that these employees' grant funding ended but they were nevertheless retained, as the Plaintiff argues.  Thus, the Plaintiff's assertions are not properly supported.[2]

At her deposition, the Plaintiff was asked, "But when you said you took the grants technician position you were told that it was a grant-funded position and if the grant ran out you would no longer be employed by the

---

[2]As the Court discusses in the next section, the City provides support for its assertion that these other employees left their positions before their grants ran out.

city?"   She replied, "That's what I believe that the posting said."
Accordingly, the Plaintiff acknowledged that it was her responsibility to take
action if she wanted to pursue further employment opportunities with the
City.  This is consistent with what others told her as well.  Gripper stated
that she was told by Larry Selinger and/or Kim Wonnell that she could
apply for other jobs if the grant ended.  Thus, although the Plaintiff may
have received conflicting information from Selinger, she was encouraged by
other officials in Human Resources to apply for other positions.  Gripper
knew that it was her responsibility to seek further employment when the
grant ended.  The Plaintiff has failed to create a genuine issue of material
fact as to the City's legitimate, non-discriminatory reason that it did not
provide jobs to all employees whose grant-funded positions ended, and she
failed to apply for another position.

Because the Plaintiff was encouraged by some City officials to apply
for other positions, the Court is also unable to conclude that taking such
action would have been an exercise in futility.  It is significant that
Selinger's alleged statement, "There's no other job openings for you," was

21

made on September 30, 2003, according to the Plaintiff.  This was the day that her grant-funded position ended.  Presumably, if the Plaintiff intended to pursue further employment opportunities with the City, she would have begun to apply for positions before the date on which her grant ended–when Selinger's alleged statement was made.  The letter had been sent almost two weeks earlier.  Thus, the Plaintiff could not have believed it to be "futile" to apply for other positions until her last day on the job.  As the Court has concluded, moreover, the record does not show that it would have been futile.

Accordingly, although the Plaintiff has established a prima facie case of retaliation pursuant to the direct method, the City has met its burden of proffering a legitimate, non-discriminatory reason for the challenged employment action.  In arguing that this reason is pretextual, the Plaintiff asserts that other employees whose grants ended were not required to apply for other jobs.  Gripper relies on Todd Renfrow's assertion that he could not recall any other employee whose grants ended being required to apply for other jobs.  The record, including the Plaintiff's own deposition testimony,

establishes that not every employee whose grant ended was retained.  The Plaintiff is unable to establish a question of fact as to pretext.

(2)  Retaliation–Indirect Method

In order to allege a prima facie case of retaliation under the indirect method, a plaintiff must show that "(1) after lodging a complaint about discrimination, (2) only (s)he, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) (s)he was performing h[er] job in a satisfactory manner."  Treadwell, 455 F.3d at 782 (quoting Stone v. City of Indianapolis Public Utilities Division, 281 F.3d 640, 643 (7th Cir. 2002)).

As previously noted, Gripper alleges that she complained to Renfrow, Berning and others that Matt Hitzemann had called her a "stupid black bitch" on two occasions.  The Plaintiff asserts that she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.  Gripper claims that during the Davlin administration, six individuals in grant-funded positions have had their grants end.  Of these six people, only Gripper was not retained.  There is no

evidence that any of the other five persons who were retained engaged in any statutorily protected activity.  Moreover, all of those persons who were retained are white.  The Plaintiff claims there is no dispute that she was performing her job according to her employer's legitimate expectations and that she suffered a materially adverse employment action.

According to an exhibit submitted with the Plaintiff's response to the City's summary judgment motion, the other individuals whose grants ended but were retained are Steve Woods, Kim Homeier, Mary Homeier, Victoria Bean, and Jennifer Ebersohl.  The Plaintiff alleges that Woods was Supervisor of Health Services; his date of separation was August 15, 2005 when he transferred.  Kim Homeier and Mary Homeier were Clerk Typists II whose dates of separation were May 14, 2003 when they transferred to Human Resources.[3]  Bean was a Staff Nurse I who transferred on April 6, 2005.  Ebersohl was also a Staff Nurse I who transferred on June 6, 2005.

_____

[3]The Plaintiff's submission suggests that Kim and Mary Homeier are two different individuals.  The City states that Mary Homeier is also known as Kim Homeier.  It would appear that there is indeed only one Homeier, given that they are both listed as Clerk Typists II who transferred to Human Resources on May 14, 2003.

The City contends that none of these employees worked in a grant-funded position in which the funding expired like for the Plaintiff's position. According to the affidavit of Connie Sisk, the Fiscal Officer for the City of Springfield Health Department, Woods applied for and obtained a higher-paying position with the City as a Computer Network Specialist I on August 15, 2005.  The bioterrorism grant under which Woods was paid did not expire.  Similarly, Sisk states that Mary Kim Homeier[4] applied for and obtained a higher paying position with the City as a Secretary I on May 18, 2003.  The Women, Infant and Children ("WIC") grant under which Homeier was paid never expired while she was employed by the Springfield Health Department.

According to Sisk's affidavit, Victoria Bean is a former employee of the City who has continuously worked in a grant-funded position as a Staff Nurse I.  Bean's position is funded under the WIC and Family Case Management grant.  She was employed by the City from October 26, 1992 to February 28, 2006.  Bean left her position with the City involuntarily

---

[4]This would seem to confirm that there is only one individual named Homeier.

25

because of the merger of the Springfield Health Department and Sangamon County Health Department.  She continues to work under the same grant as a Staff Nurse I for the Sangamon County Health Department.

According to Sisk's affidavit, Jennifer Ebersohl worked in a grant funded position as Staff Nurse I, pursuant to the Family Case Management grant.  Ebersohl was employed by the City from June 6, 2005 to September 2, 2005.  She resigned her position with the City on August 19, 2005, and accepted another position with St. John's Hospital.  The City alleges that Ebersohl left her position for a higher paying job, not because the grant she was working under expired.  Sisk states that the Family Case Management grant is on-going without any interruption and has never expired.

Based on the foregoing, the Plaintiff has failed to establish her prima facie case.  Gripper suggests that these other employees who she claims were similarly situated to her were not subject to an adverse employment action because they did not make any complaints about discrimination.  The record shows, however, that unlike in the Plaintiff's case, the grants for these employees did not end.  Woods and Homeier applied for and received

26

higher paying positions before their grants ended.  Because those employees

applied for other positions before their grants ended, therefore, they are not

similarly situated to the Plaintiff.   Moreover, Bean works under the same

grant for the Sangamon County Health Department.   Ebersohl left her

position with the City before her grant expired.  Sisk's affidavit establishes

that the grants for these individuals did not end; therefore, they were not

similarly situated to the Plaintiff.  Gripper has failed to show that other

similarly situated employees whose grants ended were retained as

employees.[5]

The Plaintiff has failed to establish that these individuals were

similarly situated to her.  As such, she has failed to establish her prima facie

case.  Even if Gripper did allege a prima facie case, the City has presented

a legitimate, non-discriminatory reason for the challenged employment

---

[5]The record does establish that Selinger's daughter-in-law accepted a
permanent position when her grant-funded position ended.  It is unclear whether
Tara Selinger applied for this permanent position.  It appears that she was first hired
in her grant-funded position in May 2001.  The record does not indicate whether she
accepted her permanent position during the Davlin administration or while former
Mayor Hasara was in office.  Of course, the City has established that other
individuals whose grants ended during the Hasara administration were not offered
permanent positions.

action, as the Court has previously discussed.  The Plaintiff has failed to show that the City's proffered reasons are pretexts.

D.  Section 1981 discrimination claims

In order to establish a prima facie case of discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was meeting her employee's legitimate expectations at the time of the alleged adverse action; (3) she was subjected to an adverse employment action; and (4) the employer treated similarly situated employees not in the protected class more favorably.  Herron v. Daimler Chrysler Corp., 388 F.3d 293, 299 (7th Cir. 2004).  The first three elements are undisputed.  As for the fourth element, the Plaintiff again notes that during the Davlin administration, five persons in grant-funded positions have had their grants end.[6]  Gripper was the only one of the five not retained.  The other four individuals who were retained are white.

As the Court previously explained, the Plaintiff is not similarly

---

[6]The Plaintiff alleges that a total of six individuals in grant-funded positions have had their grants end during the Davlin administration.  As the Court previously observed, however, it appears that there actually are only five such individuals.

28

situated to those other individuals because none of them worked in a grant-funded position where the funding expired as it did for the Plaintiff's position.   Thus, she is unable to make out a prima facie case of discrimination.  The City is entitled to summary judgment on the Plaintiff's discrimination claim.

<u>Ergo</u>, the Defendant's motion for summary judgment is ALLOWED.

All other motions are DENIED AS MOOT.

The Clerk will enter judgment in favor of the Defendant.

IT IS SO ORDERED.

ENTER: March 14, 2007

FOR THE COURT:

s/Richard Mills
United States District Judge

29